**ARCHER & GREINER**
**A Professional Corporation**
**One Centennial Square**
**Haddonfield, NJ  08033-0968**
**(856) 795-2121**
**Attorneys for Plaintiff, Avaya Inc.**
**By:    ROBERT T. EGAN, ESQUIRE**
**        TREVOR J. COONEY, ESQUIRE**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | | |
|---|---|---|
| AVAYA INC., | : | |
| | : | |
| Plaintiff, | : | Civil No. |
| | : | |
| v. | : | |
| | : | |
| TELECOM LABS, INC., TEAMTLI.COM | : | |
| CORP. and CONTINUANT | : | |
| TECHNOLOGIES, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

Plaintiff, Avaya Inc. ("Plaintiff" or "Avaya"), by way of Complaint against Defendants,

Telecom Labs, Inc. ("TLI"), TeamTLI.com Corp. ("Team") and Continuant Technologies, Inc.

("Continuant"), alleges as follows:

## THE PARTIES

1.      Avaya is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business at 211 Mount Airy Road, Basking Ridge, New

Jersey.

2.      TLI is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Seattle, Washington.

3.      Team is a corporation organized and existing under the laws of the State of Oregon, with its principal place of business in Portland, Oregon.

4.      On information and belief, TLI and Team are owned by the same persons or entities.

5.      On information and belief, Continuant is a corporation organized and existing under the laws of either the State of Oregon or the State of Washington, with its principal place of business in either the State of Oregon or the State of Washington.

6.      On information and belief, Continuant is a successor in interest of TLI and/or Team.

7.      Defendants conduct business and have conducted business in the State of New Jersey.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the claims asserted herein are between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because claims asserted herein arise under the Digital Millennium Copyright Act (DMCA), 17 U.S.C.A. § 1201 *et seq*. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because claims asserted herein arise under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and this Court exercises original jurisdiction pursuant to 15 U.S.C. §§ 1117, 1121, 1125(a) and 28 U.S.C. § 1338(a).  This Court

also exercises supplemental jurisdiction over Plaintiff's pendant state law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.     Avaya's History and the Relevant Telecommunication Products and Services.**

11.     Avaya is a successor in interest to Lucent Technologies, Inc. ("Lucent") and American Telephone and Telegraph Company ("AT&T").

12.     In October 1996, AT&T spun off its telecommunication equipment business units to form Lucent.

13.     Among other things, AT&T and Lucent designed, sold and serviced telecommunications systems, applications and equipment, including a line of "Private Branch Exchanges" or "PBXs" under a variety of names and trademarks.  PBXs are the predominant, traditional voice switching systems used in mid-to-large-sized enterprises, and connect the public voice network with the telephones and other communications stations at enterprise locations. Generally speaking, these telecommunications systems provided a variety of telephone and telecommunications capabilities.  They consisted generally of computer hardware and related peripheral equipment, such as telephones, jacks, and cables, and also included software that was developed by AT&T and Lucent and that enabled them to perform their functions.

14.     On or about September 30, 2000, Lucent spun off the customer premise equipment portion of its telecommunication equipment business to form Avaya.

15.     Avaya designs, sells and services telecommunications systems, applications and equipment, including a line of PBXs under a variety of names and trademarks, including

"DEFINITY®," and a line of IP Telephony or "Voice Over IP" systems under the trademark "COMMUNICATIONS MANAGER". Avaya's DEFINITY and COMMUNICATIONS MANAGER systems are collectively called "Avaya Telephony Systems" in this Complaint. The PBX telecommunications systems that AT&T and Lucent designed, sold and serviced and the Avaya Telephony Systems are collectively called the "Telephony Systems" in this Complaint.

16.     The Telephony Systems are essentially special purpose computers that manage communications and telephone lines. The Telephony Systems contain hardware, firmware and software ("Telephony Systems Software").

17.     Avaya sells it products and services through a distribution network that includes "Resellers" or "BusinessPartners," who enter into agreements with Avaya under which they are authorized to resell certain products and services specified in the agreements under the terms set forth in the agreements. Lucent followed a similar practice.

18.     The Telephony Systems require maintenance over their useful lives. The Telephony Systems Software includes software that performs certain maintenance functions on the Telephony Systems, checks the health of the Telephony Systems, and diagnoses and troubleshoots problems with the Telephony Systems ("Maintenance Software").

19.     The Telephony Systems Software and the Maintenance Software were initially developed by AT&T, and then further developed by Lucent. AT&T assigned to Lucent, and then Lucent to Avaya, all of their rights in the Telephony Systems Software and the Maintenance Software. Avaya has continued to develop that software.

20.     Avaya is the owner of copyrights, under the Copyright Act of the United States, as amended, 17 U.S.C. §1 et seq. and under state law, in the Telephony Systems Software and the Maintenance Software.

21.     Like AT&T and Lucent before it, Avaya has granted and continues to grant end users and some BusinessPartners limited licenses to access and use the Telephony Systems Software and the Maintenance Software for specific Telephony Systems.

22.     Certain software algorithms and portions of the Telephony Systems Software and Maintenance Software control and/or prohibit access to and the use of other software algorithms and portions of the Maintenance Software that perform specified functions and execute specified software commands that facilitate maintenance of the Telephony Systems.

23.     In order to access and operate a Telephony System and the software that it contains and to execute specified software commands, a user has to "log onto" that system using a "username" and "password." The usernames and passwords are called "logins." The Telephony Systems have different classes or "levels" of usernames and passwords, and each username and password is associated with a particular login "level." Different logins are provided to different classes of users of Telephony Systems, including Avaya personnel (called "Avaya Logins" or "Avaya-level Logins"), Avaya's "Resellers" or "BusinessPartners" (called "DADMIN Logins") and end users of the Telephony Systems (called "Customer-level Logins").

24.     The Telephony Systems Software contains certain software algorithms that allow users that log onto a Telephony System with specific logins to cause the software to perform certain specified functions and to execute specified software commands and prohibit those users from causing the software to perform other specified functions and from executing other software commands.

25.     The Maintenance Software runs tests on the Telephony Systems, including periodic background tests that run at all times, without human intervention, to check the health of the Telephony Systems, and diagnose and troubleshoot problems with the Telephony Systems.

26.     The Maintenance Software also uses a set of "commands" ("Maintenance Commands") which, if typed and entered into a terminal attached to a Telephony System, cause the Maintenance Software to perform certain functions that facilitate maintenance of the Telephony Systems.  The Telephony Systems Software contains certain software algorithms that allow users that log onto a Telephony System with specific logins to cause the software to execute specified Maintenance Commands and prohibit those users from causing the software to execute other Maintenance Commands.

27.     "Maintenance Software Permissions," or "MSPs," are permission codes that allow users with Customer-level Logins to access and use portions of the Maintenance Software that facilitate the performance of many, but not all, maintenance functions.  MSPs enable Telephony System users with Customer-level Logins to cause the Maintenance Software to execute a subset of the Maintenance Commands (the "MSP Commands").

28.     Telephony Systems are delivered to purchasers with MSPs "turned off."  MSPs have to be turned on or "activated" by Avaya to allow a user with a Customer-level Login to cause the Maintenance Software to execute the MSP Commands.  If MSPs are not activated, a user with a Customer-level login cannot cause the Maintenance Software to execute the MSP Commands.

29.     Similarly, Telephony Systems are delivered to purchasers with DADMIN access to the Telephony Systems "turned off."  DADMIN access has to be turned on or "activated" by Avaya to allow a user with a DADMIN login (*i.e.*, a BusinessPartner) to access the Telephony Systems and to, among other things, cause the Maintenance Software to execute the Maintenance Commands that the Maintenance Software permits users with DADMIN logins to execute ("DADMIN Maintenance Commands").  If DADMIN access is not activated, a user with a

DADMIN login cannot access a Telephony System and cannot cause the Maintenance Software to execute the DADMIN Maintenance Commands.

30.     DADMIN logins are "system specific" in that DADMIN access has to be activated, and a BusinessPartner needs a specific DADMIN login, for each individual Telephony System.

31.     To obtain a DADMIN login from Avaya for a specific Telephony System, a BusinessPartner must submit a request to Avaya with the permission of the Telephony System end user.  Upon receipt of that request, Avaya "activates DADMIN" for that Telephony System, and establishes a DADMIN username and password for that System.  Avaya then advises the BusinessPartner that DADMIN has been activated and provides the BusinessPartner with the DADMIN username and password for that Telephony System.  The BusinessPartner then enters the DADMIN login into the Telephony System in order to, among other things, access and use the Telephony Systems Software and the Maintenance Software and execute the DADMIN Maintenance Commands.  The BusinessPartner must enter a DADMIN password each time it accesses the Telephony System.  However, once the BusinessPartner has accessed the Telephony System using the password that Avaya provided, it has the ability to change the password to one of its own choosing.

32.     Avaya has provided DADMIN logins, and licensed the right to use those specific portions of the Maintenance Software that enable a user with a DADMIN login to cause the Maintenance Software to execute the DADMIN Maintenance Commands, to Avaya's authorized BusinessPartners only.  Under their agreements with Avaya, BusinessPartners are contractually prohibited from:

  A.  providing DADMIN logins to, or allowing their use by, end users or third

    parties;

  B.  accessing or taking control of Avaya Logins;

  C.  establishing MSPs for Customer-level Logins without providing an Avaya

    maintenance agreement and an MSP software licensing agreement; and

  D.  activating features in the Telephony Systems without paying license fees.

**B.**   **Customer Agreements and Software Licensing**

  33.  The Telephony Systems Software and the Maintenance Software, including their

software algorithms, and the usernames and passwords associated with the Avaya Logins and

DADMIN logins, are Avaya's confidential and proprietary information and constitute Avaya's

trade secrets under the law.

  34.  AT&T, Lucent and Avaya have licensed the right to use the Maintenance

Software to BusinessPartners and end users of Telephony Systems only.

  35.  By licensing the right to use MSPs, AT&T, Lucent and Avaya have licensed the

right to use those portions of the Maintenance Software that enable Telephony System users with

Customer-level Logins to cause the Maintenance Software to execute the MSP Commands.

AT&T, Lucent and Avaya have licensed the right to use MSPs to end users of Telephony

Systems only.

  36.  AT&T, Lucent and Avaya have licensed the right to use MSPs to Telephony

System end users (1) who have entered into maintenance contracts with AT&T, Lucent, Avaya

or an Avaya BusinessPartner, under which AT&T, Lucent, Avaya or a BusinessPartner provide

maintenance services to the end users' Telephony Systems, or (2) who have Telephony Systems

under warranty with AT&T, Lucent or Avaya and a pending maintenance contract with AT&T,

Lucent or Avaya. In addition, under an offering and agreement called "Maintenance Assist," Lucent and Avaya have licensed the right to use MSPs to those end users who maintain their own Telephony Systems. End-users who license the right to use MSPs pay a fee for that license.

37. AT&T, Lucent and Avaya have used various forms of customer agreements to license the right to use Telephony Systems Software, including the Maintenance Software and MSPs. In general, these forms of agreement have granted end users a personal, non-transferable and non-exclusive right to use the software; prohibited an end user from gaining access to proprietary software without authorization from Avaya; required an end user to execute an Avaya software permissions addendum in order to establish MSPs; prohibited an end user from making changes to the "permissions" of logins intended for the exclusive use of Avaya personnel; prohibited an end user from accessing and taking control of logins that were reserved for Avaya personnel; required an end user to immediately "return" or allow Avaya to "deactivate" MSPs upon the termination of the end user's maintenance agreement; and/or specifically provided that MSPs are not transferable or assignable to a "service provider" or any third party. The forms of customer agreements used by Lucent and Avaya have also contained terms protecting the companies' ownership and the confidentiality of the Telephony Systems Software and the documentation that customers were granted a right to use.

38. Under its agreements with Lucent or Avaya, an end user's license of, and right to use, MSPs and to execute the MSP Commands terminates upon the termination of an end user's maintenance agreement or Maintenance Assist agreement. At that point, Avaya routinely deactivates MSPs for the end user's Telephony System. Any end user who does not permit Avaya to deactivate MSPs and/or who continues to use the Maintenance Software to execute the MSP Commands has breached its agreement with Avaya.

C.      **Relationship Between Avaya and Defendants.**

39.      Under a series of agreements, first with Lucent and then with Avaya, TLI became a BusinessPartner of Lucent and Avaya. The last agreement in the series was executed by TLI and Avaya on or about March 21, 2003. During some of the time that it was a BusinessPartner, TLI furnished maintenance services to end users of Telephony Systems.

40.      Under an agreement dated July 24, 2003, Team became a BusinessPartner of Avaya. During the time that it was a BusinessPartner, Team may have furnished maintenance services to end users of Telephony Systems.

41.      Lucent's and Avaya's agreements with their BusinessPartners, including their agreements with TLI and Team, included provisions advising of the confidential nature of Avaya's proprietary information and placing restrictions upon a BusinessPartner's use and disclosure of that information.

42.      Avaya advised its BusinessPartners, including TLI and Team, that Avaya expected individuals who leave Avaya to stop using or revealing any confidential Avaya information that he or she may have obtained during employment with Avaya, including any passwords for Avaya products, including passwords that permit the activation or use of software features, such as MSPs. BusinessPartners, including TLI and Team, were aware that AT&T, Lucent and Avaya employees entered into agreements with AT&T, Lucent and Avaya under which they, among other things, agreed to keep confidential the companies' proprietary and private information.

43.      By letter dated July 31, 2003, Avaya terminated the March 21, 2003 agreement with TLI, effective September 30, 2003.

44.     By letter dated September 24, 2003, Avaya terminated the July 24, 2003 agreement with Team, effective November 24, 2003.

45.     TLI continued to furnish maintenance services to end users of Telephony Systems after the effective dates of the termination of its agreement with Avaya.  On information and belief, TLI continues to date to furnish maintenance services to end users of Telephony Systems.

46.     Team may have furnished maintenance services to end users of Telephony Systems after the effective dates of the termination of its agreement with Avaya, and may continue to date to furnish maintenance services to end users of Telephony Systems.

47.     Continuant has furnished maintenance services to end users of Telephony Systems, and continues to do so to date.

**D.      Defendants' Unauthorized and Tortious Activities.**

48.     During the time that it was an Avaya BusinessPartner, TLI obtained limited licenses to access and use the Maintenance Software on particular customers' Avaya Telephony Systems by obtaining DADMIN logins in the manner described above.  When the termination of TLI's agreement with Avaya became effective, TLI's licenses to access and use the Maintenance Software terminated.

49.     Team and Continuant never obtained any licenses or rights to access or use the Maintenance Software.

50.     Upon the termination of their agreements with Avaya, TLI and Team were no longer authorized to obtain, license, request and/or utilize DADMIN access or DADMIN logins or to access or use the Maintenance Software.  Continuant was never a BusinessPartner and, thus, was never authorized to obtain, license, request and/or utilize DADMIN access or DADMIN logins or to access or use the Maintenance Software.

51.    Since the effective dates of the termination of their agreements with Avaya, TLI and Team have accessed and used the Telephony Systems Software and Maintenance Software without license or rights to do so, in violation of Avaya's rights.

52.    Continuant has accessed and used the Telephony Systems Software and Maintenance Software without license or rights to do so, in violation of Avaya's rights.

53.    Since the effective dates of the terminations of TLI's and Team's agreements with Avaya, the Defendants have fraudulently induced Avaya to activate DADMIN logins on the Telephony Systems of several end users, and have fraudulently induced Avaya to disclose to the Defendants the DADMIN passwords or logins for those systems, in order to permit the Defendants to access and use the Maintenance Software without license or rights to do so, in violation of Avaya's rights.

54.    For example, beginning in or about September 2004, and continuing through approximately December 2005, the Defendants caused Consolidated Ventura, Inc., an Avaya BusinessPartner, to induce Avaya to activate DADMIN logins on the Telephony Systems of several end users and then to obtain from Avaya, and in turn provide to the Defendants, the DADMIN passwords and logins for those systems.  The Defendants then used those DADMIN passwords and logins to access and use the Maintenance Software on the Avaya Telephony Systems of the customers involved.  The Defendants did so without disclosing their participation to Avaya and without disclosing to Avaya the fact that the Defendants intended to obtain the DADMIN passwords or logins and use them to access and use the Maintenance Software.

55.    Upon termination of their agreements with Avaya, TLI and Team were required, among other things, to return to Avaya, or destroy at Avaya's request, all Confidential Information supplied by Avaya.

56.     TLI and Continuant have employed and currently employ former Lucent and Avaya employees to whom DADMIN and Avaya Logins, usernames and passwords and other confidential information were disclosed in confidence during their employment by Lucent and Avaya.

57.     Upon information and belief, one or more of the former Lucent and Avaya technicians employed by TLI or Continuant used the aforesaid logins, usernames, passwords and other confidential information without Avaya's permission or authority:

      A.     to gain access to customers' Telephony Systems;

      B.     to change options and passwords for customers' Telephony Systems to prevent access by Avaya or anyone other than TLI and/or Continuant;

      C.     to activate MSPs on customers' Telephony Systems; and/or

      D.     to access and use the Maintenance Software on customers' Telephony Systems.

58.     Upon information and belief, in order to induce end users of Telephony Systems to become or remain customers of Defendants, Defendants induced end users of Telephony Systems to use the Maintenance Software after the end users' licenses to use the Maintenance Software had expired, in violation of the end users' agreements with Lucent or Avaya.

59.     Upon information and belief, in order to induce end users of Telephony Systems to become or remain customers of Defendants, Defendants induced end users of Telephony Systems on which MSPs were activated to allow Defendants to use the Maintenance Software and to cause the Maintenance Software to execute the Maintenance Commands and MSP Commands, in violation of the end users' agreements with Lucent or Avaya.

60. Upon information and belief, in order to induce end users of Telephony Systems to become or remain customers of Defendants, and with the additional purpose and effect of inducing those end users to violate their agreements with Lucent or Avaya and allowing the end users and Defendants to use the Maintenance Software after their licenses and rights to use the Maintenance Software had expired, Defendants helped end users of Telephony Systems avoid Avaya's deactivating MSPs and/or DADMIN access on their Telephony Systems upon the expiration or termination of the end users' maintenance agreements or Maintenance Assist agreements with Lucent or Avaya.

61. Upon information and belief, in order to induce end users of Telephony Systems to become or remain customers of Defendants, and with the additional purpose and effect of inducing those end users to violate their agreements with Lucent or Avaya and allowing the end users and Defendants to use the Maintenance Software after their licenses and rights to use the Maintenance Software had expired, Defendants, without Avaya's authorization, re-activated MSPs, helped end users of Telephony Systems re-activate MSPs, and/or caused end users of Telephony Systems, acting as the Defendants' agents, to re-activate MSPs.

## FIRST COUNT

### (Misappropriation of Trade Secrets)

62. Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

63. Defendants were and are under a duty to Avaya not to use or disclose the Telephony Systems Software and the Maintenance Software, including their software algorithms, and the usernames and passwords associated with the Avaya Logins and DADMIN logins.

64.     Without authorization from Avaya, Defendants used the Telephony Systems Software and the Maintenance Software, including their software algorithms, and procured and used the usernames and passwords associated with the Avaya Logins and DADMIN logins.

65.     Defendants' actions constitute misappropriation of Avaya's trade secrets.

66.     Defendants' misappropriation of Avaya's trade secrets has proximately resulted, and will proximately result, in damage to Avaya.

67.     As a result of Defendants' misappropriation of trade secrets, Avaya has suffered and will continue to suffer irreparable harm.  Unless Defendants are restrained and enjoined from using and disclosing Avaya's trade secrets, Avaya will suffer further irreparable harm for which there is no adequate remedy at law.

## SECOND COUNT

### (Tortious Interference with Contractual Relations)

68.     Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

69.     Defendants were and are aware of the business and contractual relationships between Avaya and its customers.

70.     Avaya has a reasonable expectation that its business and contractual relationships with its customers will continue.

71.     At all times relevant thereto, Defendants were and are aware of the provisions of the agreements between Lucent and Avaya and their customers, including those agreements under which Lucent and Avaya licensed software to their customers and protected the companies' ownership and the confidentiality of the Telephony Systems Software and the documentation that customers were granted a right to use.

72.     Defendants have knowingly and intentionally interfered with Avaya's business and contractual relationships with its customers and induced end users of Telephony Systems to breach their agreements with Avaya.

73.     Defendants' interference with Avaya's business and contractual relationships with its customers was based on an improper purpose and improper means and was and is not legally justified.

74.     Defendants' interference with Avaya's business and contractual relationships has proximately resulted, and will proximately result, in damage to Avaya.

75.     Unless Defendants are restrained and enjoined from continuing to unlawfully interfere with Avaya's contractual relationships, Avaya will suffer irreparable harm for which there is no adequate remedy at law.

## THIRD COUNT

### (Tortious Interference with Prospective Economic Advantage)

76.     Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

77.     Avaya was and is in pursuit of business from its existing and potential customers, and therefore had and has a reasonable expectation of prospective economic advantage with respect to those customers.

78.     Defendants knew or should have known of Avaya's expectation of prospective economic advantage.

79.     Defendants have wrongfully, knowingly, intentionally and without justification interfered with Avaya's prospective economic advantage.

80.     As a result of Defendants' interference, Avaya has lost prospective gain.

81.     Defendants' interference has proximately caused and will proximately result in damage to Avaya.

82.     Unless Defendants are restrained and enjoined from continuing to unlawfully interfere with Avaya's prospective economic advantage, Avaya will suffer irreparable harm for which there is no adequate remedy at law.

## FOURTH COUNT

### (Fraud/Misrepresentation)

83.     Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

84.     Through their agent, Consolidated Ventura, Inc., Defendants fraudulently procured from Avaya DADMIN access and DADMIN logins for the Telephony Systems of several end users.

85.     Through their agent, Consolidated Ventura, Inc., Defendants represented to Avaya that the DADMIN access, passwords and logins procured for the Telephony Systems of several end users would be used by Consolidated Ventura, Inc. for legitimate, authorized purposes in connection with the maintenance of the Telephony Systems of the end users, which representations were false and known to be false by the Defendants.

86.     Avaya relied upon the aforesaid misrepresentations to its detriment, as a result of which Avaya has suffered damages.

87.     In addition, Defendants failed to disclose to Avaya the material facts that the Defendants would obtain the DADMIN access and logins passwords or logins that Consolidated Ventura procured from Avaya and use them to access and use the Telephony Systems Software and the Maintenance Software.

88.     Defendants knew or should have known that the aforesaid omissions were material, and that Avaya would rely on the omissions.

89.     Avaya did in fact rely on Defendants' omissions to its detriment, as a result of which Avaya has suffered damages.

90.     Defendants' fraud as aforesaid has proximately caused and/or will proximately result in damage to Avaya.

91.     Unless Defendants are restrained and enjoined from repeating their fraudulent conduct, Avaya will suffer irreparable injury and harm for which there is no adequate remedy at law.

## **FIFTH COUNT**

### **(Violations of Digital Millennium Copyright Act)**

92.     Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

93.     Avaya is the owner of copyrights in the Telephony Systems Software and Maintenance Software, which are works protected under the Copyright Act of the United States, as amended, 17 U.S.C. §1 *et seq.*

94.     The Telephony Systems Software and the Maintenance Software contain technological measures which effectively control access to those algorithms and portions of the Telephony Systems Software and Maintenance Software that cause the Telephony Systems Software and Maintenance Software to operate and to execute Maintenance Commands and MSP Commands.

95.     Defendants circumvented a technological measure that effectively controls access to a protected work, in violation of 17 U.S.C.A §1201(a)(1), by re-activating MSPs, helping end

18

users of Telephony Systems re-activate MSPs, and/or causing end users of Telephony Systems,

acting as the Defendants' agents, to re-activate MSPs, after Lucent or Avaya had de-activated

MSPs upon the expiration or termination of the end users' maintenance agreements or

Maintenance Assist agreements with Avaya.

96.     Defendants circumvented a technological measure that effectively controls access

to a protected work, in violation of 17 U.S.C.A §1201(a)(1), by using DADMIN access, logins,

usernames and passwords that were fraudulently procured from Avaya and other confidential

information which Defendants did not have a right to use, in order to gain access to Telephony

Systems and use the Telephony Systems Software and Maintenance Software.

97.     Avaya has been injured by, and suffered damages as a result of, TLI's violations

of 17 U.S.C.A §1201(a)(1).

## SIXTH COUNT

### (False Advertising/Violation of § 43(a) of the Lanham Act)

98.     Avaya repeats and incorporates the allegations of the foregoing paragraphs of this

Complaint.

99.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides, in relevant part,

as follows:

> (1) Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any word,
> term, name, symbol, or device, or any combination thereof, or any
> false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to
> > deceive as to the affiliation, connection, or association of
> > such person with another person, or as to the origin,
> > sponsorship, or approval of his or her goods, services, or
> > commercial activities by another person, or

           (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

      shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

100. Defendants and Avaya are in commercial competition in the market for maintenance services for Telephony Systems.

101. As part of an organized campaign to penetrate the market for maintenance services for Telephony Systems, and for the purpose of influencing consumers to buy Defendants' services, Defendants have made false and misleading statements to Avaya's customers and potential customers regarding the maintenance services offered by Avaya and Defendants.

102. Defendants have falsely advised Avaya's customers and potential customers that "Avaya's MSPs are included in TLI's maintenance service" and that TLI's maintenance services are "as good as Avaya's, but cheaper."

103. Continuant has made material misrepresentations of fact in a sales brochure, entitled "Corporate Profile," that Continuant has provided to customers and potential customers, a true copy of which is attached to this Complaint as Exhibit A. Specifically, Continuant's sales brochure falsely and/or misleadingly states that:

      A.    Avaya does not provide "fixed 'per port' pricing";

      B.    Avaya does not offer a "Telco troubleshooting" option;

      C.    Avaya does not offer "Routine Remote MAC"; and

      D.    Avaya does not offer optional "Vacation coverage."

104. Defendants' false and misleading statements violate Section 43 of the Lanham Act.

105.    Defendants' false and misleading statements have deceived and/or have a tendency to deceive Avaya's customers and potential customers and the public in general.

106.    Defendants' false and misleading statements are material because they are likely to influence the purchasing decisions of customers and potential customers of Avaya's products and services.

107.    Defendants' actions were intentionally and deliberately undertaken for the purposes of causing confusion, mistake and deception, and for the purpose of enabling Defendants to profit unfairly and at the expense of Avaya.

108.    Defendants' advertised goods and services traveled in interstate commerce.

109.    Defendants' false advertising has proximately caused and/or has the likelihood of resulting in damage to Avaya, including the loss of its customers and potential customers, declining sales and income and damage to business reputation and goodwill and other damages. Unless Defendants are restrained and enjoined from such false advertising, Avaya will suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

## SEVENTH COUNT

### Trade Libel/Commercial Disparagement

110.    Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

111.    Defendants have made, published and transmitted statements which were knowingly false, made in reckless disregard for truth or falsity, or intended by them to result in harm to Avaya, about the quality of Avaya's maintenance services, in advertising and other oral and written communications directed to Avaya's existing and potential customers and others.

This conduct was undertaken by Defendants with the intent of prejudicing Avaya in the conduct of its business and to deter others from dealing with Avaya and/or its BusinessPartners.

112.    Defendants did not enjoy any privilege to make false, misleading and/or disparaging statements about Avaya or Avaya's products and services.

113.    Defendants made their false and misleading statements concerning Avaya's maintenance services with the specific intent to harm Avaya.

114.    Avaya has suffered damages as the result of the false, misleading and disparaging statements made by Defendants concerning Avaya's maintenance services.

## EIGHTH COUNT

### Breach of Contract

115.    Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

116.    The BusinessPartner agreements entered into by TLI and Team contained restrictions against the use and disclosure of Avaya's Confidential Information, including its trade secrets.

117.    TLI and Team have breached their contractual obligations by procuring, using and disclosing the Telephony Systems Software and the Maintenance Software, including their software algorithms, and the usernames and passwords associated with the Avaya Logins and DADMIN logins, without authorization from Avaya.

118.    TLI's and Team's breaches have proximately caused and will proximately result in damage to Avaya.

119.    Unless said Defendants are restrained and enjoined from further breaching their contractual obligations, Avaya will suffer irreparable injury and harm for which there is no adequate remedy at law.

## NINTH COUNT

### Civil Conspiracy

120.    Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

121.    TLI, Team and Continuant acted in concert with each other to commit the unlawful and tortious acts set forth above.  Defendants knowingly and intentionally agreed to commit such acts in an effort to harm Avaya's business.

122.    As a result of the foregoing overt actions committed by the Defendants acting in concert, Avaya has suffered and will suffer damages.

123.    Unless Defendants are restrained and enjoined from continuing their unlawful conspiracies, Avaya will suffer irreparable injury and harm for which there is no adequate remedy at law.

## TENTH COUNT

### (Unfair Competition)

124.    Avaya repeats and incorporates the allegations of the foregoing paragraphs of this Complaint.

125.    The foregoing conduct and threatened conduct of Defendants constitutes unfair competition.

126.    Such unfair competition has proximately caused and will proximately result in damage to Avaya.

127.     Unless Defendants are restrained and enjoined from such unfair competition, Avaya will suffer irreparable injury and harm for which there is no adequate remedy at law.

**WHEREFORE**, Avaya demands judgment against Defendants as follows:

1.     For temporary and permanent injunctions, on such terms as the Court deems reasonable, to prevent or restrain violations of 17 U.S.C. §1201.

2.     For an order for the impounding, on such terms as the Court deems reasonable, of any device or product that is in the custody or control of Defendants and that the Court has reasonable cause to believe was involved in a violation of 17 U.S.C. §1201.

3.     For an order compelling the remedial modification or the destruction of any device or product involved in any violation 17 U.S.C. §1201 which is in Defendants' custody or control or which has been impounded.

4.     For an award of actual damages, profits or statutory damages under 17 U.S.C. §1203(c).

5.     For the actual damages suffered by Avaya and for Defendants' profits as a result of Defendants' acts as described herein.

6.     For permissible statutory damages pursuant to 15 U.S.C. § 1117.

7.     For punitive damages.

8.     For recovery of Avaya's costs against Defendants.

9.     For preliminary and permanent injunctions restraining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the injunction order by personal service or otherwise, from:

A.     using the Maintenance Software;

B.    using DADMIN logins, usernames and passwords to access Telephony Systems;

C.    directly or indirectly attempting to procure DADMIN logins, usernames or passwords from Avaya or its BusinessPartners;

D.    inducing end users of Telephony Systems to use the Maintenance Software after the end users' licenses to use the Maintenance Software have expired;

E.    inducing end users of Telephony Systems on which MSPs were activated to allow Defendants to use the Maintenance Software or to cause the Maintenance Software to execute the Maintenance Commands and MSP Commands;

F.    assisting end users of Telephony Systems to avoid Avaya's deactivating MSPs and/or DADMIN access on their Telephony Systems upon the expiration or termination of the end users' maintenance agreements or Maintenance Assist agreements with Lucent or Avaya;

G.    re-activating MSPs;

H.    causing others to re-activate MSPs without Avaya's authorization;

I.    assisting end users of Telephony Systems to re-activate MSPs without Avaya's authorization;

J.    disclosing Avaya's trade secrets;

K.    committing any other unfair business practices directed toward obtaining for itself the business and customers of Avaya;

L.      making false and misleading statements to Avaya's customers and
potential customers regarding the maintenance services offered by Avaya
and Defendants; and

M.      inducing, encouraging, aiding, abetting, contributing to and conspiring to
commit any of the aforesaid acts.

10.     For an order compelling Defendants to file with this Court and serve upon Avaya
within thirty days after service upon Defendants of this Court's injunction issued in this action, a
written report sworn to and signed under oath setting forth in detail the manner in which
Defendants have complied with such injunction.

11.     For attorneys fees, interest and costs of suit.

12.     For such other relief as the Court may deem just and reasonable.

ARCHER & GREINER
A Professional Corporation
Attorneys for Plaintiff, Avaya Inc.


By:    s/ Robert T. Egan
ROBERT T. EGAN
TREVOR J. COONEY


DATED:  June 2, 2006

## CERTIFICATION UNDER L.Civ.R. 11.2

I, ROBERT T. EGAN, ESQUIRE, hereby certify that I am a shareholder in the law firm of Archer & Greiner, P.C., attorneys for the plaintiff, Avaya Inc., and that the matter in controversy in this case is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


                                         s/ Robert T. Egan
                                         ROBERT T. EGAN

DATED: June 2, 2006


## DISCLOSURE STATEMENT UNDER FED.R.CIV.P. 7.1

Avaya Inc. states that there is no corporation that is its parent corporation and that no publicly held corporation owns 10% or more of its stock.


                                       ARCHER & GREINER
                                       A Professional Corporation
                                       Attorneys for Plaintiff
                                       AVAYA INC.


By:     s/ Robert T. Egan
                         ROBERT T. EGAN

DATED: June 2, 2006

2153038v5