UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AVAYA INC.

        Plaintiff,

    v.

TELECOM LABS, INC.,
TEAMTLI.COM CORP., CONTINUANT,
INC., SCOTT GRAHAM, DOUGLAS
GRAHAM, and BRUCE SHELBY,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 06-2490
(JEI/KMW)

**OPINION**

**APPEARANCES:**

ARCHER & GREINER, PC
Robert T. Egan
One Centennial Square
Haddonfield, NJ 08033
    Counsel for Plaintiff

K&L GATES LLP
Anthony P. Larocco
One Newark Center
10th Floor
Newark, NJ 07201
    and
KIRPATRICK & LOCKHART, PRESTON, GATES, ELLIS, LLP
David S. Kwon
One Newark Center
Tenth Floor
Newark, NJ 07102
    and
HUGHES, HUBBARD & REED, LLP
Eric K. Blumenfeld
101 Hudson Street
Suite 3601
Jersey City, NJ 07302
    Counsel for Defendants

**IRENAS**, Senior District Judge:

Presently before the Court are four motions for reconsideration of three partial summary judgment opinions. (*See* Dkt. Nos. 440, 442, 443, 446) In addition, Avaya moves to certify an interlocutory appeal. (*See* Dkt. No. 434) For the following reasons, the motions will be denied.

## I.

This case involves the Defendants' access to proprietary maintenance software that Plaintiff Avaya, Inc. ("Avaya") and its predecessors developed and embedded in complex telephony systems that they designed, manufactured, and sold.[1] (Def.'s Statement of Undisputed Material Facts Vol. I ("SUMF") ¶¶ 1, 7) There are two types of telecommunications systems: (1) "Private Branch Exchange" systems, also known as "PBX" systems; and (2) "Predictive Dialing System" platforms, also known as "PDS" platforms.

PBX systems are telephone switching systems containing hardware, firmware, and software. PBX systems are used by mid-to-large sized companies and other enterprises to connect their voice communications to the public voice networks. (Fourth Amended Complaint ¶ 16) Avaya manufactures, sells, and services

---

[1] For a more detailed recitation of the factual and procedural history see Judge Brown's Opinions and Orders granting in part and denying in part Avaya's motions for partial summary judgment. (*See* Dkt Nos. 415, 426-31) Familiarity with those Opinions and Orders are presumed.

PBX systems. According to Counterclaimants, the PBX systems manufactured, sold, and serviced by Avaya and its predecessors are commonly referred to as the "Definity" platform. (Counterclaims ¶ 1) Other manufacturers currently produce and sell competing PBX systems. (*Id.* ¶¶ 1, 37)

PDS platforms are hardware and software systems that "automate dialing and increase dialing efficiency by predicting call outcomes based upon a number of factors." (*Id.* ¶ 50) In 1999, Avaya's predecessor, Lucent, acquired a company that manufactured and sold PDS.[2] After the acquisition, Lucent began to manufacture and sell the PDS platform. (*Id.* ¶ 52) As a result of its spinoff from Lucent, Avaya took over the manufacture and sales of the PDS platform. (*Id.* ¶ 57)

Avaya initiated this action on June 2, 2006 by filing a complaint against Telecom Labs, Inc. ("TLI"), Continuant, Inc. ("Continuant"), and TeamTLI.com Corp. ("Team"), asserting ten causes of action alleging, among other things, that TLI, Team, and Continuant gained unauthorized access to Avaya systems. (Dkt. No. 1)

On September 21, 2009, Defendants ultimately counterclaimed with 13 causes of action: (1) monopolization in the private

---

[2] In October 1996, American Telephone and Telegraph Company ("AT&T") spun off various telecommunication business units to form Lucent Technologies, Inc. ("Lucent"). (Counterclaims ¶ 41) In September of 2000, Lucent spun off its "enterprise networking group" to form Avaya. (Counterclaims ¶ 1, 56)

branch exchange ("PBX") market in violation of Section 2 of the Sherman Act; (2) attempted monopolization in the PBX market in violation of Section 2 of the Sherman Act; (3) tying PBX maintenance and patches in violation of Section 1 of the Sherman Act; (4) tying PBX maintenance and upgrades in violation of Section 1 of the Sherman Act; (5) monopolization in the PDS market in violation of Section 2 of the Sherman Act; (6) attempted monopolization in the PDS market in violation of Section 2 of the Sherman Act; (7) tying PDS maintenance and patches in violation of Section 1 of the Sherman Act; (8) typing PDS maintenance and upgrades in violation of Section 1 of the Sherman Act; (9) illegal conspiracy in violation of Section 1 of the Sherman Act; (10) tortious interference with business/contractual relations; (11) tortious interference with prospective business or economic advantage; (12) injurious falsehood/trade libel or slander; and (13) breach of the implied covenant of good faith and fair dealing.

In Opinions and Orders dated January 25, 2012, Judge Brown denied Avaya's motion for summary judgment on Counterclaimants' first through ninth counts except to the extent that the third count alleged "tying as to SS (Software Support) and patches" and the fourth count alleged "tying of PBX upgrades and maintenance." (*See* Opinion at 33-34, Dkt. No. 430) Judge Brown further granted Avaya's motions for summary judgment on counterclaimants' tenth

4

through thirteenth counts.  (*See* Dkt. Nos. 427, 429) On April 20, 2012, this case was reassigned to this Court.

## II.

A motion for reconsideration may be granted on the ground that (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) vacating the Order is necessary to correct a clear error of law or manifest injustice.  *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  The parties argue that Judge Brown's Opinions contain clear errors of law or fact.

## III.

Both Avaya and Counterclaimants have each filed two separate motions for reconsideration that attack various holdings of Judge Brown's three Opinions granting in part and denying in part Avaya's four motions for partial summary judgment.

### A.

Avaya's first motion seeks reconsideration based on a clear error of law because (1) supracompetitive pricing is a necessary element to the existence of a relevant single-brand aftermarket but was treated only as a factor in the Opinion's analysis; (2)

customer reliance on the ability to use Independent Service Providers ("ISPs") for post-purchase equipment maintenance was a necessary element to establish the relevant aftermarket but was treated only as a factor in the Opinion's analysis; (3) Counterclaimants failed to present evidence that customers based their decision to purchase PBX or PDS from Avaya based on the ability to obtain equipment maintenance from ISPs. (Dkt. No. 440)

With respect to the first and second arguments, Judge Brown did not commit clear error in holding that both supracompetitive pricing and customer reliance are merely factors in determining the existence of th relevant single-brand aftermarket. *See Harrison Aire, Inc. v. Aerostar Intern., Inc.*, 423 F.3d 374, 384 (3d Cir. 2005) (noting that many non-dispositive factors affect the *Kodak* analysis including supracompetitive pricing). Therefore, the Court will not grant the Motion on this basis.

Moreover, Judge Brown directly addressed Avaya's third argument. "[T]he record indicates that some PBX or PDS owners did expect to, or indeed did enter into, maintenance contracts with ISPs." (Opinion at 24, Dkt. No. 430) Mere disagreement with the holding of an opinion is an issue to be raised on appeal, not on a motion for reconsideration. Accordingly, Avaya has failed to establish a clear error of law and Avaya's first motion will be denied.

**B.**

Avaya's second motion for reconsideration argues clear error insofar as (1) Avaya's conduct cannot be deemed anticompetitive and (2) Counterclaimants failed to establish antitrust injury or causation. (Dkt. No. 443)

As to the first argument, Avaya has not persuaded this Court that Judge Brown clearly erred. Indeed, one section of Avaya's brief is entitled "Counterclaimants Cannot Meet Their Burden." (Br. Avaya 11, Dkt. No. 444-1) However, it is Avaya - not Counterclaimants - that carry a heavy burden to succeed on a motion for reconsideration. Avaya falls well-short of carrying that burden.

Avaya's second argument fails because it again attempts to elevate supracompetitive pricing to a necessary element. Judge Brown did not clearly err in holding that supracompetitive pricing is but a non-dispositive factor in the analysis. *See Harrison Aire*, 423 F.3d at 384. Accordingly, Avaya's second motion for reconsideration will be denied.

**C.**

Counterclaimants' first motion for reconsideration argues that the Court committed clear error in dismissing Counterclaimants' tenth and eleventh claims for tortious interference because (1) the Court applied the wrong causation

7

standard under New Jersey law and (2) the Court impermissibly disregarded the opinion of Counterclaimants' expert and made factual inferences in favor Avaya. (Dkt. No. 446)

First, Counterclaimants argue that the Court applied a "sole cause" standard when New Jersey law merely requires but-for causation. Counterclaimants further argue that in situations where multiple but-for causes could independently cause the harm, courts must apply the substantial factor test. However, Counterclaimants candidly acknowledge that no New Jersey case has discussed whether the substantial factor test applies to claims for tortious interference. (Br. Counterclaimants at 7, Dkt. No. 447) A clear error of law cannot be made where the Court declines to extend the law to accommodate a party's argument.

Counterclaimants next argue that the Court impermissibly disregarded the expert opinion of Glenn Pomerantz and decided issues of fact in favor of Avaya. These facts, Counterclaimants argue, had they been considered, would have established causation. This Court disagrees. Judge Brown did not disregard facts, but decided that the record identified "multiple reasons why a PBX or PDS customer chose not to enter into a maintenance contract with TLI or Continuant." (Opinion at 21, Dkt. No. 426) No one reason identified by Counterclaimants rose to the level of but-for causation. Far from disregarding facts, Judge Brown applied the facts to the legal standard and determined that

8

Counterclaimants had failed to carry their burden with respect to causation. Therefore, Judge Brown did not commit a clear error and Counterclaimants' first motion for reconsideration will be denied.

**D.**

Counterclaimants' second motion for reconsideration argues that the Court committed clear error in dismissing Counterclaimants' twelfth and thirteenth claims for trade libel because (1) the Court applied the wrong special damages causation standard and (2) the Court should not have disregarded Pomerantz's expert opinion. (Dkt. No. 442)

Counterclaimants first argue that the Court should have applied the substantial factor test from *Patel v. Soriano*, 369 N.J.Super. 192, 248 (App.Div. 2004). Instead, the Court applied "the natural and direct result" standard of causation from *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 378 (D.N.J. 2004). Considering both causation standards have been applied to trade libel claims in this jurisdiction, Judge Brown did not clearly err by applying the natural and direct result standard here.

Counterclaimants next argue that the Court should not have disregarded the expert opinion and report of Pomerantz absent a *Daubert* hearing. Counterclaimants contend that Pomerantz's report

provides ample basis to show causation based on Avaya's allegedly unlawful misrepresentations to customers. Contrary to Counterclaimants' assertions, however, the Court was able to avoid the admissibility issue because several factors fueled former and potential customers' decisions to seek maintenance contracts with parties other than Counterclaimants. (Opinion at 18, Dkt. No. 428) Therefore, Judge Brown held that even if Pomerantz's report were admissible, the allegedly false publication would not have naturally and directly caused the alleged special damages. Accordingly, the Court did not commit a clear error and Counterclaimants' second motion for reconsideration will be denied.

## IV.

Avaya seeks to certify two legal issues for interlocutory appellate review:

> 1. Can an antitrust claimant establish the presence of an economically relevant single-brand "aftermarket" for equipment maintenance without evidence of supracompetitive pricing of such maintenance?

> 2. Can an antitrust claimant establish an economically relevant single-brand aftermarket for equipment maintenance without proof of supracompetitive pricing *and* without proof that owners reasonably relied at the time of equipment purchase on the availability of a maintenance alternative unaffected by the challenged conduct?

(Br. Avaya at 1, Dkt. No. 435-1)

To exercise the discretion to certify an interlocutory

appeal, the district court's order must: "(1) involve a controlling question of law, (2) offer substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (internal quotations omitted); *see also* 28 U.S.C. § 1292(b). "The decision whether or not to grant certification is entirely within the district court's discretion, and even if all three criteria under Section 1292(b) are met, the district court may still deny certification." *Krishanthi v. Rajaratnam*, 2011 WL 1885707, *2 (D.N.J. 2011) (internal quotations omitted) (quoting *Morgan v. Ford Motor Co.*, 2007 WL 269806, *2 (D.N.J. 2007).

Both issues Avaya seeks to certify for review presume that Counterclaimants have failed to present - and will later be barred from presenting - evidence of supracompetitive pricing in the relevant aftermarket. Support for this view comes from a single line of Judge Brown's Opinion: "As to the listed factors, although Counterclaimants did not present sufficient evidence of supracompetitive pricing, they did present evidence of the other factors." (Opinion at 23, Dkt. No. 430) (parenthetical omitted) This failure, Avaya argues, requires dismissal of the antitrust claims.

Counterclaimants respond by arguing that (1) Avaya did not raise the issue of supracompetitive pricing in its motion for

summary judgment and (2) at the time briefing closed on Avaya's first motion for summary judgment, discovery had not yet expired for expert witnesses. Therefore, Counterclaimants argue they would not be precluded from establishing supracompetitive pricing at trial, even if such proof were required to establish the claim. This Court agrees.

An interlocutory appeal is designed to save resources and expedite the termination of litigation. None of these purposes would be furthered here by an interlocutory appeal. First, this Court does not read Judge Brown's decision to bar evidence of supracompetitive pricing at trial. Second, if Counterclaimants establish supracompetitive pricing in the relevant aftermarket at trial, then the legal issues Avaya proposes to certify for an interlocutory appeal would be moot. Finally, regardless of the resolution of the legal issues Avaya seeks to certify, the remaining claims will nonetheless require the parties to present many of the same facts at trial. An interlocutory appeal thus would not conserve significant resources but would only unduly delay a trial. *See Bachowski v. Usery*, 545 F.2d 363, 369 (3d Cir. 1976) ("by interdicting most interlocutory appeals, we deprive litigants of a tool that could possibly be used to harass parties with lesser resources, and to drive them into submission."). Accordingly, this Court declines to exercise its discretion to certify Avaya's proposed legal issues for an interlocutory appeal

12

and will deny the motion.

**IV.**

For the reasons set forth above, the parties' motions will
be denied.


Dated: 4/26/12                              /s/ Joseph E. Irenas

                                     **JOSEPH E. IRENAS, S.U.S.D.J.**

13