UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVAYA INC.<br><br>        Plaintiff,<br><br>v.<br><br>TELECOM LABS, INC., TEAMTLI.COM CORP., CONTINUANT, INC., SCOTT GRAHAM, DOUGLAS GRAHAM, and BRUCE SHELBY,<br><br>        Defendants/Counterclaimants. | Hon. Joseph E. Irenas, S.U.S.D.J.<br>Hon. Karen M. Williams, U.S.M.J.<br><br>Civil Action No. 1:06-cv-02490 (JEI-KMW)<br><br>**CERTIFICATION OF<br>ALAN BORNSTEIN, ESQ.<br>IN SUPPORT OF TLI/C'S FEE APPLICATION** |

**Alan Bornstein**, of full age, hereby certifies as follows:

1.    I am an attorney admitted to practice law in the State of Washington and a member at Jameson Babbitt Stites & Lombard, P.L.L.C.  I have first-hand knowledge of the facts set forth in this Certification.  I understand that this certification is being submitted in support of Telecom Labs, Inc. and Continuant, Inc.'s ("TLI/C") fee application.

2.    I was admitted to practice law in Washington State in 1984.  Since my admission to the Washington State Bar, I have been continuously involved in trials of civil matters in state courts, federal courts, and arbitration tribunals.

3.    Much of my work is for clients in the construction industry (contractors, owners (public and private), and design professionals) and for real estate clients.  However, I learned something about telecommunications cases starting in the early 1990s.  At that time, I represented, in federal court in Seattle, resellers of mobile-phone service against mobile-phone service providers who unlawfully discriminated, as to price per minute of phone service, against resellers in favor of customers in privity with the mobile-phone service providers.

4. From 1984 to 1991, I was an associate with the former law firm of Ferguson & Burdell in Seattle, and was elected as partner in 1991. From 1992 to 1994, I was a partner in the merged firm of Schwabe, Williamson, Ferguson & Burdell. From 1994 to the present, I have been a partner in Jameson Babbitt Stites & Lombard, PLLC, which consists of people (secretaries, a paralegal, and lawyers) who had all worked together at the Ferguson & Burdell firm. In a nutshell, I have had the great fortune to work with the same people since my graduation from law school 30 years ago.

5. I am active in Washington State bar activities. A few years ago, the Board of Governors of the State Bar appointed me to act as a bar examiner. I served as a bar examiner for three years as the examiner who wrote and graded contract-law questions. More recently, I served as a Past Chair of the Construction Law Section of the State Bar, as well as an officer. I have given presentations at CLEs in Washington State, including those sponsored by the American Bar Association.

6. In my law firm, I actively participate in determining the billing rates of attorneys. To do this, I investigate the market rates of local attorneys doing comparable work. The hourly rates charged by our firm are less than those charged by the larger and mid-sized firms in Seattle and roughly equivalent to what smaller firms charge. This is important to us as we want to be price competitive.

7. My work on this case started in June 2006 with Avaya's initiation of this lawsuit, and my services ended in July 2010. Before then and since, I provide commercial law advice and litigation representation to TLI/C.

8. The rates charged by me are rates that were billed to TLI/C. Based on my experience as a lawyer and of my knowledge of rates charged by other lawyers and legal

assistants with comparable experience in Seattle, I believe that my rates are reasonable for my services given my experience, and as mentioned earlier are lower than the rates charged by local larger and mid-sized firms and roughly equivalent to those rates charged by local smaller firms like ours.

9. As stated above, I have provided legal counsel to TLI/C in the above-captioned matter. Although I am not admitted to practice in this Court *pro hac vice*, I have acted in a supporting role to TLI/C and to lead counsel for TLI/C, K&L Gates, LLP, from approximately July 2006 through July 2010.

10. My typical fee for services rendered in commercial litigations is $320/hour. In this case, the rate that I charged TLI/C for my services was typically $285 to $300/hour.

11. In addition to the work I performed, Jameson Babbitt utilized Matt Adamson (a member of the firm), whose typical rate was $300/hour and whose rate charged to TLI/C in this case was typically $275/hour. Jameson Babbitt also utilized Erika Trask (a licensed paralegal), whose typical rate was $100/hour and whose rate charged to TLI/C in this case was typically $85/hour.

12. In connection with Jameson Babbitt's engagement, TLI/C was billed a total of 287.95 hours of legal services rendered in this matter.

13. TLI/C directly paid Jameson Babbitt a total of at least $17,350.92 for services rendered in this matter.

14. Attached as Exhibit A is a summary of the major tasks Jameson Babbitt provided on behalf of TLI/C in this matter, along with the number of hours and dollar amount associated with each.

3

NW-468630

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
Alan Bornstein

Dated: November 6, 2014

<u>**Exhibit A**</u>
**Summary of work performed by Jameson Babbitt on behalf of TLI/C**

1. **Depositions**

   <u>Summary of services provided in connection with this task</u>: Mr. Bornstein prepared for, attended, and analyzed the depositions of the following witnesses:
   - Dan Christenson (TLI/C account executive);
   - Harold Hall (TLI/C consultant);
   - Jeffrey Iselin (TLI/C purchasing manager);
   - Jennifer Mudie (TLI/C senior named account manager);
   - Dawna Obermeier (TLI/C remote maintenance specialist);
   - Mary Beth Peot (Avaya areas services vice president);
   - Thomas Powers (TLI/C account executive);
   - Sandra Rodriquez (Avaya sales process assistant); and
   - Jason Stewart (Dakota Clinic health communications manager).

   <u>Number of hours Jameson Babbitt provided in connection with this task</u>: 150.7

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task</u>: $44,913.50

2. **Written Discovery**

   <u>Summary of services provided in connection with this task</u>: Mr. Bornstein and Ms. Trask performed a variety of tasks in connection with serving and responding to discovery requests. These included: reviewing and assembling TLI/C's documents for production; reviewing Avaya's discovery requests; communicating with TLI/C employees and outside attorneys; and reviewing documents produced by Avaya and third-parties.

   <u>Number of hours Jameson Babbitt provided in connection with this task</u>: 73

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task</u>: $21,035.00

3. **Pleadings/motions**

   <u>Summary of services provided in connection with this task</u>: Mr. Bornstein performed a variety of services for TLI/C related to pleadings and motion practice. These included the following: research; communications with K&L Gates attorneys and TLI/C employees; and reviewing and analyzing pleadings and motions.

   <u>Number of hours Jameson Babbitt provided in connection with this task</u>: 21

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task</u>: $5,880.00

NW-468630

4. **Responding to Avaya's Subpoena to Jameson Babbitt**

   <u>Summary of services provided in connection with this task:</u>  Avaya served a subpoena on Jameson Babbitt and sought communications between attorneys and TLI/C customers. In response, Messrs. Bornstein and Adamson: reviewed the subpoena, files, and documents; conducted legal research; prepared a motion to quash the subpoena, along with supporting papers; and met and conferred with K&L Gates and Avaya attorneys.

   <u>Number of hours Jameson Babbitt provided in connection with this task:</u>  15.9

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task:</u>  $4,409.00

5. **Contracts analysis and other case strategy**

   <u>Summary of services provided in connection with this task:</u>  Mr. Bornstein assisted with general case strategy and analysis, especially with regard to Avaya's customer contracts. Specifically, he discussed general case strategy with K&L Gates attorneys, researched legal issues related antitrust issues and Avaya's copyright infringement claims, and reviewed contract documents, including analyzing licensing issues with TLI/C employees.

   <u>Number of hours Jameson Babbitt provided in connection with this task:</u>  11.85

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task:</u>  $3,130.00

6. **Responding to Avaya's FUD campaign**

   <u>Summary of services provided in connection with this task:</u>  Mr. Bornstein reviewed and commented on Avaya's "FUD letter" and offered guidance as to how to respond, including revising a press release and discussing approaches for dealing with customers in light of the letter and lawsuit.

   <u>Number of hours Jameson Babbitt provided in connection with this task:</u>  8.5

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task:</u>  $2,415.00

7. **State of Michigan bid**

   <u>Summary of services provided in connection with this task:</u>  Mr. Bornstein was involved with the aftermath of a bid that the State of Michigan initially awarded to TLI/C. After Avaya interfered and Michigan revoked the contract award, Mr. Bornstein assisted in reviewing Michigan's letters and contract documents and drafting a response on behalf of TLI/C.

   <u>Number of hours Jameson Babbitt provided in connection with this task:</u>  7

   <u>Amount of fees Jameson Babbitt billed TLI/C in connection with this task:</u>  $2,100.00

NW-468630